UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL H.,

                           **Plaintiff,**                                           6:20-CV-6855Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                           **Defendant.**

_____

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #15.

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on October 16, 2017, alleging disability beginning May 2, 2010, at the age of 31, due to obesity, type 2 diabetes and coronary heart disease. Dkt. #9, p.104.

On October 21, 2019, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Margaret Heck, at an administrative hearing before Administrative Law Judge ("ALJ"), Brian LeCours. Dkt. #9, pp.50-101. Plaintiff

testified that he resided with his girlfriend and her three children, ages 11, 19 and 21. Dkt. #9, p.54. Plaintiff was in a wheelchair, which he used when he had to walk more than 100 – 200 feet or so. Dkt. #9, pp.54-55. He estimated that he could probably walk about the length of a football field without assistance. Dkt. #9, p.69. Plaintiff explained that he often used the wheelchair when he was going out to avoid chairs that wouldn't hold his weight. Dkt. #9, p.66. He can sit for two to three hours before his lower back starts to hurt. Dkt. #9, p.71. He can drive and sit in a car for a maximum of two hours before his back locks up. Dkt. #9, p.73. He is unable to go up and down stairs because he is afraid that his knees will buckle. Dkt. #9, p.71. He is capable of lifting 30-40 pounds and can bend down to pick things up, but not repetitively. Dkt. #9, p.72. He is capable of loading his wheelchair in and out of the car himself. Dkt. #9, p.73. He has diabetic neuropathy in his fingertips and feet. Dkt. #9, p.76. He suffers from gout which makes it impossible to walk. Dkt. #9, p.79. When he does try to walk, he experiences shortness of breath. Dkt. #9, p.79. He becomes dizzy when he gets up too quickly from a standing position. Dkt. #9, p.80. He has attempted, but struggled, to quit smoking. Dkt. #9, pp.81-84. His current goal is to get his weight under 400 pounds and then begin aerobic pool therapy. Dkt. #9, p.85. Plaintiff currently weighs 495 pounds. Dkt. #9, p.62. He has a GED. Dkt. #9, p.55.

The VE classified plaintiff's past work as a cashier, an unskilled, light exertion position; assistant retail manager, a skilled position performed at medium exertion; a janitor, which is a skilled, medium exertion position; a user support analyst, which is a skilled, sedentary exertion position; and a computer sales position, which is a skilled, light duty exertion position. Dkt. #9, pp. 89-90. When asked to assume an

individual with plaintiff's age, education and past work experience who could perform sedentary work; lift and carry 10 pounds frequently and 20 pounds occasionally; stand or walk 2 hours of an 8 hour day and sit 8 hours of an 8 hour day; occasionally drive, balance, stoop, kneel, crouch, and climb ramps and stairs but never crawl, climb ladders, ropes or scaffolds and be exposed no more than occasionally to extremes of heat and cold or to pulmonary irritants such as strong fumes, odors, dust and gases, with no exposure to hazardous conditions such as unprotected heights and dangerous machinery, the VE testified that plaintiff could perform his past work as a user support analyst and could also work as a telephone solicitor, information clerk, and gambling cashier, each of which are sedentary, semi-skilled positions and as a document preparer, ticket preparer and call out operator, each of which are sedentary, unskilled positions. Dkt. #9, pp.91-92 & 97. The VE testified that plaintiff would not be able to work if he was off task more than 15 percent of the workday or more than two unscheduled absences on a monthly basis. Dkt. #9, p.93.

The ALJ rendered a decision that plaintiff was not disabled on November 15, 2019. Dkt. #9, pp.32-45. The Appeals Council denied review on October 2, 2020. Dkt. #9, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on October 19, 2020. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to

disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff met the insured status requirements of the Social Security Act through December 31, 2013 and had not engaged in substantial gainful activity since the alleged onset date of May 2, 2010; (2) plaintiff's morbid obesity, diabetes mellitus with neuropathy, status post heart disease and obstructive sleep apnea constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work[1] with the following limitations: lift no more than twenty pounds, carry no more than ten pounds, sit for 8 hours and stand or walk for two hours of an 8 hour workday, occasionally balance, stoop, kneel, crouch and climb ramps or stairs, no more than occasional exposure to temperature extremes and pulmonary irritants and no exposure

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a).

to hazardous conditions; and (5) plaintiff was capable of performing his past work as a user support analyst, a skilled, sedentary exertion position, and was also capable of working as a document preparer, ticket checker and call out operator, each of which were unskilled, sedentary exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #9, pp.34-45.

Plaintiff argues that the ALJ failed to properly evaluate the opinion of plaintiff's long-term primary care provider, Dr. Connolly, and improperly interpreted treatment notes to craft plaintiff's RFC. Dkt. #11-1, p, pp.10-17.

The Commissioner responds that the ALJ provided adequate reasons for his determination that Dr. Connelly's assessment was not persuasive and appropriately considered the record as a whole to reasonably determine that plaintiff was capable of performing sedentary work with additional limitations. Dkt. #12-1, pp.5-11.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec'y*, 515 F. Supp.3d 2, 7

(W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c) & 20 C.F.R. § 416.920c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain the ALJ's consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c) & 20 C.F.R. § 416.920c(b)(2). With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1) & 20 C.F.R. § 416.920c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2) & 20 C.F.R. § 416.920c(c)(2). Thus, supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec'y*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec'y*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

On July 15, 2019, Melanie R. Conolly, M.D., completed a Physical Treating Medical Source Statement ("PTMSS"), and prepared a letter outlining her medical opinion based upon her treatment of plaintiff every three months since 2008. Dkt. #9, pp.985 & 997-1001. Dr. Conolly's letter opines that:

> Patient should do no work involving walking more than 100 yard. [sic] He should not sit for more than an hour or stand for more than 10 minutes. He should be able to alternate positions as needed and should be allowed to lay down after 4 hours of alternating sitting and standing. He should be allowed to keep his legs elevated if seated. He should be allowed to ambulate in a wheelchair if necessary. [H]e can lift up to 10 pounds occasionally. He can lift up to 50 pounds if this is only rarely. He should never crouch, squat or climb ladders. He should stoop or climb stairs rarely. He should not work in any environments that are dusty, moldy or have temperature extremes. He should not perform work that is highly stressful. These restrictions are permanent and are due to medical conditions including low back pain with sciatica, PTSD, gout and diabetes.

Dkt. #9, p.985. In her PTMSS, Dr. Conolly indicated that plaintiff would need to take unscheduled breaks lasting 5 minutes every 45 minutes. Dkt. #9, p.999. She also indicated that plaintiff could rarely look up or turn his head right or left. Dkt. #9, p.1000. The PTMSS also indicated that plaintiff's symptoms would constantly interfere with the attention and concentration needed to perform even simple work tasks and that he would only be capable of low stress jobs. Dkt. #9, p.998. Dr. Conolly estimated that plaintiff would be absent more than four days per month because of his impairments. Dkt. #9, p.1000. She opined that the limitations she assessed existed since May 2, 2010, but noted that plaintiff's arthritis was worse due to time. Dkt. #9, p.1001.

>The ALJ determined that Dr. Conolly's opinions were not persuasive
>
>>because they are inconsistent with the diagnoses, treatment records, and other objective evidence. Particularly, despite Dr. Conolly's findings of tenderness along the paraspinal muscles in the lumbar spine overall, multiple musculoskeletal examinations were overwhelmingly unremarkable. Moreover, although Dr. Conolly's evaluations occurred within the same period, they vary significantly and are therefore, internally inconsistent. Notably, Dr. Conolly opined that the claimant was "walking more" such that he was "using his wheelchair less." Similarly, Dr. Conolly opined that the claimant could walk up to four hours in an eight-hour workday, yet she alleged that the claimant should be allowed to use a wheelchair, which is also inconsistent with the record that revealed that the claimant routinely denied neck pain, back pain and myalgias. In fact, by her own admission, Dr. Conolly reported that the claimant's back pain was stable on medication.

Dkt. #9, p.42 (citations to record omitted). Contrary to plaintiff's argument, this explanation is sufficient to support the ALJ's assessment of Dr. Conolly's opinion. *Cf. Brianne S. v. Comm'r of Soc. Sec.*, 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (Where an ALJ merely states that an examining physician's opinion is not consistent with the overall medical evidence, the ALJ has failed to adequately explain the ALJ's conclusions regarding consistency).

The ALJ also had the benefit of a review of the medical record by state agency review physician, S. Sonthineni, M.D., which was completed on January 5, 2018. Dkt. #9. p.116. Dr. Sonthineni determined that plaintiff could sit for about 6 hours in an 8 hour day, stand or walk for about 2 hours in an 8 hour day, and lift 10 pounds frequently and 20 pounds occasionally, with unlimited push and pull. Dkt. #9, p.116. Thus, Dr. Sonthineni opined that plaintiff was capable of light work. Dkt. #9, p.42.

Because they are deemed to be qualified experts in the field of social security disability, an ALJ may rely upon the opinion of non-examining state agency medical consultants in formulating an RFC. *Angela H.-M. v. Comm'r of Soc. Sec.*, __ F. Supp.3d __, 6:20-CV-6676, 2022 WL 4486320, at *5 (W.D.N.Y. Sept. 27, 2022).

An ALJ's RFC determination is not required to correspond perfectly with any of the medical source opinions provided; rather, the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole. *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). In the instant case, the Court is satisfied that the ALJ properly considered the overall record, which is generally devoid of any indications of functional limitations that would prevent plaintiff from engaging in substantial gainful activity at the limited sedentary level set by the ALJ. For example, plaintiff testified that he could sit for 2-3 hours at a time and walk about the length of a football field without assistance. Dkt. #9, pp.69 & 71. Although medical records indicate plaintiff's ability to walk was impacted by knee and ankle pain and that he experienced intermittent gout aggravated by walking, plaintiff was consistently encouraged to walk and was noted to have "no impairment (Can Walk 200 ft Without Assistance); to have "worked up to 30 min/day walking on treadmill" and to be exercising regularly. Dkt. #9, pp.340, 358, 443, 549, 552, 1004. He was observed to have normal range of motion and no edema. Dkt. #9, pp.1006, 1231. He routinely denied burning of extremities and did not demonstrate loss of sensation upon testing. Dkt. #9, p.306, 340, 358, 499, 550, 1213. An EKG performed on May 29, 2019 was normal. Dkt. #9, p.1231. Plaintiff consistently denied fatigue and daytime drowsiness

when using his CPAP. Dkt. #9, pp.340, 443, 368. While he was in a wheelchair at the administrative hearing, plaintiff explained that he often used it when he was going out so that he had a chair available that would accept his weight. Dkt. #9, p.66. Contrary to plaintiff's argument, a review of the overall record does not suggest that the ALJ misread the evidence or otherwise failed to credit evidence that would conflict with his RFC determination. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. ##11 & 13), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**September 30, 2022**

                                            s/ H. Kenneth Schroeder, Jr.
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**